IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALETHIA JAMES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security | : | |
| Administration[1] | : | NO.  11-5096 |

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER
United States Magistrate Judge                               July 10, 2014

> Plaintiff, Alethia James, filed this action pursuant to 42 U.S.C. § 405(g), seeking
judicial review of the final decision of the Commissioner of the Social Security Administration
("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI
of the Social Security Act ("Act").

> Plaintiff filed a Brief and Statement of Issues in Support of Request for Review
("Pl.'s Br."), defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br."), and
plaintiff filed a reply thereto ("Reply").  For the reasons set forth below, this court recommends
that plaintiff's Request for Review be **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

> Plaintiff filed an application for SSI with a protective filing date of November 17,
2008.[2]  (R. 65, 132.)  The claim was denied initially and a request for a hearing was filed timely.

---

[1]      On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted as the defendant in this case.

[2]      Plaintiff filed applications for disability insurance benefits ("DIB") and SSI on November 17, 2008.  (R. 67-70, 112-23.)  In her application for DIB, plaintiff alleged an onset date of April 1, 2005.  See R. 132.  However, plaintiff was not entitled to DIB because she was not insured after December 31, 2003.  See R. 128; see also 20 C.F.R. §§ 404.130-404.132.  To be eligible for SSI, plaintiff must show that she was disabled on or after November 17, 2008, her protective filing date, and on or before April 5, 2010, the date of the ALJ's decision.  See R. 23; see also 20 C.F.R. § 416.335.

(R. 71-78.)  A hearing was held on March 4, 2010, before Administrative Law Judge ("ALJ")

Christine McCafferty.  (R. 27-64.)  Plaintiff, who was represented by counsel, appeared and

testified.  A vocational expert ("VE"), also appeared and testified, as did plaintiff's mother.  (R.

50-56, 58-63.)  In a decision dated April 5, 2010, the ALJ found that plaintiff was not disabled

under the Act.  (R. 10-23.)  The ALJ made the following findings:

1.   The claimant has not engaged in substantial gainful activity since November 17, 2008, the application date (20 CFR 416.971 et seq.).

2.   The claimant has the following severe impairments: fibromyalgia; sleep apnea; obesity; depression and anxiety; diabetes; and, asthma (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: avoidance of dust, fumes, toxins, etc.; avoidance of moving or dangerous machinery; and, limited to simple, repetitive tasks with only occasional changes in the work setting.

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.   The claimant was born on December 4, 1963 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since November 17, 2008, the date the application was filed (20 CFR 416.920(g)).

(R. 15-22.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner.  (R. 1-9.)

## II.    STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)), cert. denied, 134 S. Ct. 1274 (2014).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden.  20 C.F.R. § 416.920.  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience.  See id.  The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    BACKGROUND

At the administrative hearing on March 4, 2010, plaintiff testified that she is an insulin-dependent diabetic.  (R. 35.)  At that time, plaintiff was five feet, six inches tall and

weighed 247 pounds.  (R. 39.)  She was advised to lose weight; gastric bypass surgery also has

been recommended.  (R. 39, 49.)  Plaintiff stated that she has foot and ankle discomfort and pain.

(R. 39.)  Plaintiff further testified that she has unpredictable, variable pain in her back, neck,

arms and shoulders.  (R. 40-41.)  Due to the pain, plaintiff has difficulty at times raising her

arms.  Id.  According to plaintiff, she may be unable to use her arms for up to three hours when

she experiences pain.  (R. 41.)  A "muscle rub" or Motrin can help the pain.  Id.

Plaintiff has been diagnosed with bilateral carpal tunnel syndrome.  (R. 30, 37.)

Plaintiff explained that her hands "get numb and tingly, and it's hard to really grasp or use them."

(R. 42.)  Plaintiff experiences hand problems "almost every day" and the problems last "all day

long."  Id.  She has been prescribed hand splints for both wrists and hands to wear at night, but

does not always use them because she feels that the splints are not effective.  (R. 36.)  Plaintiff

was advised by her doctors that injections could help with her hand problems, but plaintiff has

refused the injections because she is afraid of potential side-effects.  (R. 36-37.)

Plaintiff also has problems with sleep and has been prescribed a CPAP; however,

plaintiff may only use it three times per week because it "dries [her] out" and causes throat

discomfort.  (R. 43.)  Plaintiff also was under the care of a rheumatologist.  (R. 56-57.)  Plaintiff

testified that she experiences side effects from her medication, including drowsiness and

dizziness.  (R. 58.)

With respect to her mental health, plaintiff testified that she attempted suicide in

2001.  (R. 45.)  At the time of the hearing, she received weekly outpatient psychiatric treatment at

Episcopal Hospital.  (R. 46, 56.)  Plaintiff explained that she has sought mental health treatment

to address spousal abuse issues.  (R. 47.)  At the time of the administrative hearing, plaintiff did

not live with her husband, but rather with her mother.  (R. 47-48.)  Plaintiff had lived with her

mother since having foot surgery in 2007.  Id.  Plaintiff lived in her mother's home with her

mother, her mother's husband, and plaintiff's two sons.  (R. 49.)  Plaintiff's two sons were

twenty-three and twenty-six years old, respectively.  Id.

Plaintiff's mother, Catherine Broderick, also testified at the administrative

hearing.  See R. 50-56.  Ms. Broderick stated that she assists plaintiff when plaintiff is "in pain"

and that plaintiff spends most of the time in her room.  (R. 52-53.)  According to Ms. Broderick,

plaintiff often stays in her room because "she's not feeling well" and plaintiff is not helpful with

cleaning the house.  (R. 53, 54.)  Ms. Broderick stated that one of plaintiff's sons is employed,

but plaintiff's other son does not work because he is mentally disabled.  Id.  With respect to

household chores, Ms. Broderick indicated that plaintiff is unable to wash dishes because her

hands cramp and plaintiff is unable to mop the floor due to back pain.  (R. 54.)  In addition, Ms.

Broderick testified that grocery shopping for the household is done by Ms. Broderick, her

husband, and plaintiff's son.  (R. 55.)  Ms. Broderick described her daughter as "easily

depressed" and indicated if "anything that goes on in the home or something like this or

somebody could just say the wrong thing to her, then she gets to, you know, can't breathe and

screaming, crying and, you know, things like this."  Id.  Ms. Broderick explained that such

behavior has continued "for a long time" and that plaintiff cannot go anywhere by herself so Ms.

Broderick must accompany plaintiff.  (R. 56.)

The ALJ also questioned plaintiff about her work history.  Plaintiff testified that

she last worked as a manager in training at McDonald's.  (R. 34.)  In addition, plaintiff worked as

a nurse's assistant and as a cleaner/housekeeper.  (R. 59-60.)  The VE testified that plaintiff's

past work as a nursing assistant is semi-skilled, medium work.  (R. 59.)  The VE classified

plaintiff's work as manager-trainee at a fast food restaurant as semi-skilled, medium work and

the work as a cleaner/housekeeper as unskilled, medium work.  (R. 60.)  The ALJ asked the VE to consider an individual of plaintiff's age, education and work experience, with a residual functional capacity limited to a light level of exertion, who must avoid "dust, fumes, toxins, etc." and "moving or dangerous machinery," and who is limited to simple, repetitive tasks with only occasional changes in the work setting.  (R. 60-61.)  The VE opined that such an individual could not return to plaintiff's past work, but that there are other jobs in the national economy that such an individual could perform.  (R. 61.)  The VE testified that such an individual could work as an inspector which is light, unskilled work (for which there are 70,000 jobs in the national economy and 700 in the regional economy), as an assembler of plastic hospital equipment which is light, unskilled work (for which there are 80,000 jobs in the national economy and 200 in the regional economy), and as an assembler of electrical accessories which is light, unskilled work (for which there are 90,000 jobs in the national economy and 800 in the regional economy).  Id.

In response to questioning from plaintiff's counsel, the VE clarified that the three identified jobs assume that such work would be performed full-time, during a forty-hour work week.  (R. 62.)  The VE also explained that "light" work entails standing and walking or lifting and carrying up to twenty pounds occasionally (up to a third of the work day).  Id.  In addition, the assembler and inspector jobs require bilateral manual dexterity.  Id.  The VE also explained that standard rest periods for such jobs would include thirty minutes for lunch, and two, ten or fifteen minute breaks, one in the morning and one in the afternoon, or during the length of any shift.  (R. 63.)

IV.     DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has the following severe impairments: fibromyalgia, sleep apnea, obesity, depression and anxiety,

7

diabetes, and asthma, but that such impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 15-16.)  The ALJ also found that plaintiff has the non-severe impairment of carpal tunnel syndrome.  (R. 15.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work, such that plaintiff must avoid "dust, fumes, toxins, etc." and "moving or dangerous machinery" and plaintiff is limited to simple, repetitive tasks with only occasional changes in the work setting.  (R. 17.)  However, plaintiff contends that substantial evidence does not support the ALJ's decision.  Specifically, plaintiff avers that the ALJ: improperly rejected plaintiff's subjective complaints of pain and assessed plaintiff's credibility; erred in relying on the report of a state agency consultative examiner; improperly relied upon the assessment of a state agency disability examiner; failed to consider evidence of plaintiff's mental impairment; and posed a deficient hypothetical to the VE.  (Pl.'s Br. at 6-24; Reply at 1-3.)  In contrast, defendant maintains that substantial evidence supports the decision of the ALJ.  (Def.'s Br. at 3-13.)

### A.      Subjective Complaints of Pain and Credibility Assessment

Plaintiff first argues that the ALJ erred in rejecting plaintiff's subjective complaints of pain for "the wrong reason."  (Pl.'s Br. at 6-11.)  Specifically, plaintiff contends that the ALJ failed to properly assess plaintiff's fibromyalgia.  In response, defendant contends that the ALJ's decision demonstrates that the ALJ properly assessed plaintiff's credibility. (Def.'s Br. at 3-7.)

Plaintiff argues that the record establishes that she suffers from variable pain, a characteristic of fibromyalgia.  (Pl.'s Br. at 7.)  According to plaintiff, the ALJ improperly rejected the complaints of pain based on a lack of "objective, clinical damage to prove it."  See

Pl.'s Br. at 6.  In her brief, plaintiff directs this court to the case law of various Circuit courts regarding the standards for analyzing complaints of pain and fibromyalgia, see Pl.'s Br. at 7-11, but plaintiff does not refer the court to evidence in the record that supports her argument, other than plaintiff's testimony at the hearing, see Pl.'s Br. at 7.

Third Circuit case law does not dictate that a plaintiff's complaints of pain must be accepted by the ALJ.  Rather, an ALJ must consider the statements of a claimant concerning her symptoms, but the ALJ is not required to credit them.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96–7p, 20 C.F.R. § 404.1529(a)).  It is within the province of the ALJ to evaluate the credibility of a claimant.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  An ALJ's "findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'"  Irelan v. Barnhart, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)).  An ALJ may disregard subjective complaints when contrary evidence exists in the record.  Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).  The ALJ must, however, provide his or her reasons for doing so.  Burnett, 220 F.3d at 122; Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting claim).

Furthermore, the ALJ is directed by social security regulations to engage in a two-step process when considering plaintiff's subjective complaints.  The regulations state that the Commissioner will consider all of a plaintiff's symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  See 20 C.F.R. § 416.929(a).  Social Security Ruling 96-7p further directs that in

9

"determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  "Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he . . . must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

In the case at bar, the ALJ found plaintiff's complaints of disabling pain not credible, citing specific portions of the record to support her conclusion.  (R. 18-21.)  The ALJ conducted an RFC assessment and found:

> The claimant testified that she cannot work due to fibromyalgia, bilateral carpal tunnel syndrome, sleep apnea, obesity, depression, anxiety, diabetes, and asthma.  The claimant had difficulty articulating the frequency and nature of her pain.  She reported that she has cramping and sharp pains in her ankles, feet, and toes making it difficult to walk.  The claimant noted that the pain varies in her back, neck, arms, and shoulders.  According to the claimant, she cannot lift her arms at times and that these times vary.  The claimant was unable to state how often this happens.  She stated that the limitation can last for three hours and that she takes Motrin or muscle relaxers which she at first noted helped, but later said that they do not always work.

> The claimant testified that her fingers and hands get numb, tingle, and swell.  She noted that this varies and that it "comes and goes," but that it is "almost every day" and that it is "all day long."  The claimant stated that it is hard to grasp things.  She does not wear her splints and testified that her doctor recommended injections which she has declined.

(R. 18-19.)

The ALJ also took note of the fact that plaintiff did not regularly use her CPAP machine for sleep apnea, despite plaintiff's testimony that she feels rested when she does.  (R. 19, 20.)  The ALJ also noted that plaintiff completed a function report in January 2009, in which

plaintiff indicated that she spent time with others multiple times each week and that she attended church regularly.  (R. 19.)  In this report, plaintiff also represented that she took public transportation, was able to go out alone, and went shopping.  Id.

After reviewing the evidence, the ALJ stated at length:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant was unable to articulate the frequency of her complaints, similar to the reports in her medical records.  Although the claimant complained of diffuse pains, they were at different times.  There are no significant clinical findings to account for the claimant's complaints and the record does not support the level of disabling pain and limitations about which she testified.

The claimant's records also revealed that the claimant is not always compliant with her medications.  In May of 2009, according to the records from Philadelphia College of Osteopathic Medicine, the claimant stated that she is not compliant with her medications at times because she is sick of taking them and she forgets.  (Exhibit 11F/24)  In December 2009, the claimant was similarly noted as not adhering to medication recommendations.  (Exhibit 11F/6)

In terms of the claimant's alleged physical impairments, in November of 2008, the claimant complained of pain in her shoulders, knees, and lower back; however, upon examination, she was noted as having a good range of motion in both her shoulders and knees.  (Exhibit 10F/39).  The claimant's depression was thought to play a "big role in exacerbating" her symptoms.  (Id.).  In October of 2009, the records revealed that the claimant presented for a complaint of "aching all over."  (Exhibit 10F/16).  However, upon examination, the claimant was noted as having normal joints, a normal gait and stance, and as unable to accurately describe her pain, in her extremities.  (Exhibit 10F/18-19).  Most recently, despite continued complaints of pain, the claimant was reported as sleeping on trigger points that were described as not bothersome.  (Exhibit 10F/7).  The claimant was also noted as not trying a wall pillow or physical therapy.  (Exhibit 10F/3).  An x-ray of the neck from January of 2010 showed only mild degenerative changes. (Id.).

(R. 19-20.)[3]

In addition, the ALJ analyzed the report of Emil Sfedu, M.D., who conducted a consultative examination on April 13, 2009.  (R. 21.)  The ALJ attributed little weight to the conclusions drawn by Dr. Sfedu because "the restrictions were based on the claimant's subjective complaints."  Id.  The ALJ pointed out that the notes of Dr. Sfedu's physical examination "did not indicate any problems to support such extensive limitations as [plaintiff] was described as having a normal gait, normal range of motion, normal grip strength, no synovitis, [and] no peripheral edema."  Id.

The ALJ's decision demonstrates that she questioned the sincerity of plaintiff's complaints for several reasons, including the notations in the record that plaintiff was not compliant with her medication regimen, the inconsistencies between plaintiff's description of her pain and her activities of daily living, and the physical assessment of the consultative examiner. The ALJ considered plaintiff's subjective complaints, but also considered those complaints in light of the medical evidence, her treatment history and all of the other evidence of record, and ultimately concluded that plaintiff's condition was not severe enough to prevent her from performing certain types of light work with limitations.  This analysis satisfied the ALJ's obligation to explain why she rejected plaintiff's subjective complaints of pain.  See Burnett, 220 F.3d at 122; Matullo, 926 F.2d 240 at 245.  The ALJ found plaintiff's fibromyalgia to be a severe impairment.  However, the ALJ need not blindly accept the limitations that plaintiff claims.  See

[3]    The medical records from plaintiff's rheumatologist dated November 2009 and January 2010 that were cited by the ALJ also show, inter alia, that plaintiff's complaints of neck pain were attributed to osteoarthritis and degenerative disc disease, her complaints of knee and back pain were attributed to osteoarthritis and plaintiff was encouraged to participate in a weight loss program, and her carpal tunnel syndrome was noted as stable.  See R. 276-83.  Moreover, in January 2010, it was noted that the "fibromyalgia [was] possibly secondary to bad [osteoarthritis]."  (R. 278.)

Chandler, 667 F.3d at 363.  Accordingly, the court finds that the ALJ sufficiently explained her reasons for finding plaintiff's complaints of pain overstated and that conclusion is supported by substantial evidence.[4]

**B.     Assessment by Consultative Examiner**

Plaintiff argues that the ALJ did not properly consider the consultative examination conducted by Emil Sfedu, M.D., on April 13, 2009.  (Pl.'s Br. at 11-13.)  Plaintiff contends that the "ALJ had a duty to clarify before rejecting defendant's own state agency-contracted medical expert."  Id. at 11.  The ALJ stated:

> A consultative examination was conducted on April 13, 2009 by Emil Sfedu, M.D.  (Exhibit 3F).  The claimant was assessed as capable of: lifting 2-3 pounds frequently and occasionally; only standing for an hour or less a day with unlimited sitting; occasional postural activities; limited reaching, handling, fingering, feeling; and, environmental restrictions that are a result of the claimant's asthma.  (Exhibit 3F/5-6).  This assessment, however, has been given little weight as it was noted that the restrictions were based on the claimant's subjective complaints and the physical examination did not indicate any problems to support such extensive limitations as she was described as having a normal gait, normal range of motion, normal grip strength, no synovitis, no peripheral

---

[4]     The court is similarly unpersuaded by plaintiff's argument that the ALJ erred by selectively citing to evidence of plaintiff's activities of daily living out of context.  See Pl.'s Br. at 15-18.  Plaintiff contends that the ALJ distorted the true significance of the evidence by "selectively taking bits-and-phrases out-of-context."  Id. at 16.  However, the ALJ is not required to explicitly discuss every report in the record.  See Mays v. Barnhart, 227 F. Supp. 2d 443, 449 (E.D. Pa. 2002).  "An ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source."  Comiskey v. Astrue,  2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–04 (3d Cir. 2008)).  The ALJ "may not reject pertinent or probative evidence without explanation."  Id. (internal citation omitted).  Case law dictates that the ALJ must give some indication of the evidence which she rejects and her reasons for discounting such evidence.  See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").  See also Burnett v. Comm'r of Soc. Admin., 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").  In the present case, the ALJ fully supported each of her conclusions in a lengthy decision.  The court finds that the ALJ did not mischaracterize plaintiff's self-reported activities of daily living when assessing plaintiff's credibility.  See R. 19 (citing R. 146-47).

edema, and Dr. Sfedu further reported that it was "unclear why she has these
pains." (Exhibit 3F/3).

(R. 21.)

The court is not persuaded by plaintiff's argument that the ALJ had a duty to
recontact Dr. Sfedu before rejecting his assessment in order to determine whether fibromyalgia
could provide an explanation for the symptoms he assessed. (Pl.'s Br. at 13.) As defendant
points out, the ALJ did not reject Dr. Sfedu's assessment, but rather attributed little weight to it.
In addition, the ALJ was not required to recontact Dr. Sfedu. The Social Security regulations
that were applicable at the time plaintiff's claim was adjudicated directed that an ALJ must
recontact a medical source "for purposes of clarification" when "'the report from [the] medical
source contains a conflict or ambiguity that must be resolved, the report does not contain all the
necessary information, or does not appear to be based on medically acceptable clinical and
laboratory diagnostic techniques.'" Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205 (3d Cir.
2008) (quoting 20 C.F.R. § 416.912(e)(1)).[5] The Third Circuit determined that, under these

---

[5]     The regulations governing an ALJ's duty to recontact a medical source were amended,
effective March 26, 2012. The current regulations state in relevant part:

> (b) If any of the evidence in your case record, including any medical opinion(s), is
> inconsistent, we will weigh the relevant evidence and see whether we can
> determine whether you are disabled based on the evidence we have.
>
> (c) If the evidence is consistent but we have insufficient evidence to determine
> whether you are disabled, or if after weighing the evidence we determine we
> cannot reach a conclusion about whether you are disabled, we will determine the
> best way to resolve the inconsistency or insufficiency. The action(s) we take will
> depend on the nature of the inconsistency or insufficiency. We will try to resolve
> the inconsistency or insufficiency by taking any one or more of the actions listed
> in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the
> actions listed below. We will consider any additional evidence we receive
> together with the evidence we already have.
>
> > (1) We may recontact your treating physician, psychologist, or other
> > medical source. We may choose not to seek additional evidence or

regulations, the ALJ is required to recontact a medical source only when the evidence received

from the "treating physician or psychologist or other medical source is inadequate for us to

determine whether you are disabled."  Id. (quoting 20 C.F.R. § 416.912(e)(1)).  The Third Circuit

characterized this requirement as "an important prerequisite."  Id.

The evidence from Dr. Sfedu was not inadequate for the ALJ to determine

whether plaintiff is disabled.  Dr. Sfedu clearly noted that the limitations he placed on plaintiff's

lifting, carrying, standing, walking, sitting, pushing and pulling were based on plaintiff's

complaints.  See R. 203.  In the notes of his physical examination of plaintiff, Dr. Sfedu stated:

"Examination of the joints did not show any signs of acute synovitis and the patient as mentioned

above complains of severe pains throughout.  It is not clear why she has these pains.  Range of

motion, however, is essentially within normal limits."  (R. 201.)  Dr. Sfedu's comment that "[i]t

is not clear why she has these pains" merely reflects that Dr. Sfedu determined that plaintiff's

complaints of pain were not consistent with his physical examination of her.

---

clarification from a medical source if we know from experience that the
source either cannot or will not provide the necessary evidence.  If we
obtain medical evidence over the telephone, we will send the telephone
report to the source for review, signature, and return;

(2) We may request additional existing records (see § 404.1512);

(3) We may ask you to undergo a consultative examination at our expense
(see §§ 404.1517 through 404.1519t); or

(4) We may ask you or others for more information.

(d) When there are inconsistencies in the evidence that we cannot resolve or
when, despite efforts to obtain additional evidence, the evidence is insufficient to
determine whether you are disabled, we will make a determination or decision
based on the evidence we have.

20 C.F.R. § 404.1520b.

Thus, the evidence received from Dr. Sfedu was not ambiguous and did not require clarification.  The ALJ reviewed Dr. Sfedu's report and observations and attributed the weight she deemed appropriate, stating her reasons for doing so.  The ALJ acted in accordance with Social Security regulations with respect to her reliance upon the evidence from Dr. Sfedu.  Substantial evidence supports the ALJ's findings.

### C.    Assessment of State Agency Disability Examiner

Plaintiff next asserts that the ALJ erred when she accorded "great weight" to the physical RFC assessment completed by a state agency disability examiner on April 20, 2009.  (Pl.'s Br. at 14-15.)  Although she cites to no case law in support of her argument, plaintiff contends that no significant weight should be afforded to the assessment because the state agency disability examiner is not a medical professional.  Id.  Plaintiff claims that "[a]ssigning 'great weight' to a clerical functionary was an error, prejudicing the outcome."  Id. at 15.

It appears that the RFC assessment by the state agency disability examiner does not reflect acceptable medical opinion evidence because the state agency disability examiner is not an acceptable medical source.  The RFC assessment was completed at the initial determination stage by an adjudicator whose signature is followed by the code "LEX K14."  See R. 209.  As noted by the court in Yorkus v. Astrue, the Commissioner has explained that the code "LEX" followed by number on the physical RFC form indicates that the signatory is a single decision maker ("SDM")).  2011 WL 7400189, at *4 n.6 (E.D. Pa. Feb. 28, 2011), approved and adopted Mar. 24, 2011.  Several courts have found that the RFC assessment of an SDM is entitled to no evidentiary weight.  Id. at *4.  See also Gray v. Comm'r of Soc. Sec. 2014 WL 1248024, at *8 (W.D. Pa. Mar. 26, 2014) ("a disability adjudicator with an 'LEX' designation is not an 'acceptable medical source' within the meaning of the regulations and their opinion is not

entitled to any weight"); <u>Demace v. Astrue</u>, 2013 WL 1775055, at *13 (M.D. Pa. Apr. 25, 2013)

("With respect to the reliance on a form completed by the state agency disability examiner,

administrative law judges have been instructed to accord such documents no evidentiary

weight."); <u>Stewart v. Astrue</u>, 2012 WL 1969318, at *4-5 (E.D. Pa. May 31, 2012) (noting that

"the Commissioner has endeavored to clarify that the Physical RFC assessment form, Form SSA-

4734-BK, when completed by a state agency adjudicator rather than a 'medical consultant' is not

to be treated as opinion evidence to be considered when formulating the RFC at the hearing

level.") (citing SSA Program Operations manual System ("POMS") § DI 24510.050), <u>Report and

Recommendation adopted by</u>, 2012 WL 5494662 (E.D. Pa. Nov 13, 2012).

    In any event, defendant correctly posits that plaintiff's argument is meritless

because the ALJ did not rely uncritically on the disability examiner's RFC assessment.  (Def.'s

Br. at 8-9.)  The court agrees that although the ALJ improperly referred to the disability examiner

as a "State agency consultant," remand is not warranted on this issue because such error is

harmless in the case at bar.  In her decision, the ALJ stated: "the State agency consultant

completed a physical residual functional capacity assessment on April 20, 2009 for diabetes and

asthma and concluded that the claimant could perform medium exertion."  (R. 21.)  The ALJ

determined that the assessment should be afforded "great weight," but ultimately determined that

the RFC she fashioned would include "greater limitations to account for the claimant's subjective

complaints."  <u>Id.</u>  In so doing, the ALJ placed greater restrictions upon the plaintiff's RFC than

that of the disability examiner, concluding that plaintiff is capable of light work, but must avoid

dust, fumes, toxin, moving or dangerous machinery, and should be limited to simple, repetitive

tasks with only occasional changes in the work setting.  <u>See</u> R. 17.

Thus, the ALJ did not give the disability examiner's RFC assessment controlling weight, but rather conducted her own RFC analysis and further limited plaintiff's RFC based on plaintiff's subjective complaints.  Any error committed by the ALJ in attributing "great weight" to the disability examiner's RFC assessment is harmless given the ALJ's determination that the disability examiner's RFC assessment should be further restricted based upon plaintiff's subjective complaints.  The ALJ conducted an independent analysis of the evidence of record and plaintiff's subjective complaints.  The record evidence constitutes substantial evidence to support the ALJ's RFC determination.  Any error by the ALJ in referring to the disability examiner as a state agency consultant whose RFC assessment could be attributed evidentiary weight was harmless.  See Bromly v. Astrue, 2013 WL 1136744 (W.D. Pa. Mar. 18, 2013) (concluding that ALJ's consideration of the RFC assessment of the state agency adjudicator was harmless error because the RFC assessment was not in conflict with other evidence in the record).  Thus, substantial evidence supports the ALJ's decision.

**D.     Outpatient Psychiatric Treatment Records**

Plaintiff represents that after the administrative hearing, she submitted documentation to the ALJ by facsimile on March 8, 2010 which included, inter alia, certain outpatient psychiatric treatment records from Temple University School of Medicine, Department of Psychiatry.  A group of such documents was included in the administrative record and was considered by the ALJ and addressed in her decision.  See R. 20, 428-58.  Plaintiff refers to such documentation as the "Batch 1" records.  However, plaintiff also represents that a second group of outpatient psychiatric treatment records from Temple University School of Medicine, Department of Psychiatry was faxed to the ALJ on March 8, 2010.  Plaintiff refers to these documents as the "Batch 2" documents.  Plaintiff argues that the case should be remanded for

18

further consideration because the ALJ did not address in her decision, or include in the administrative record, these "Batch 2" records.

As the complete Batch 2 documents were not included in any of the documentation submitted to the court by either party in their initial court filings, see Docs. 7-9, the undersigned ordered plaintiff's counsel to submit the medical records at issue, see Doc. 11, and permitted the parties to further brief this issue. See Letter Brief of Plaintiff's Counsel dated May 29, 2014 and Docs. 14-16.[6]

Defendant contends that plaintiff failed to submit the Batch 2 documents in accordance with the Commissioner's regulations and procedures. See Doc. 14 at 1-3. Defendant further argues that the Batch 2 records do not constitute "new and material evidence" under Szubak v. Sec'y of Health and Human Servs., 754 F.2d 831 (3d Cir. 1984) and its progeny, such that remand to address the Batch 2 documents is not warranted or necessary. Defendant further posits that plaintiff failed to raise the "new and material evidence" argument in her initial Request for Review and has therefore waived this argument. See Doc. 14 at 3.

Essentially, plaintiff's counsel represents to the court that he submitted additional medical records after the administrative hearing, that all documentation submitted after the hearing was submitted in accordance with the Commissioner's regulations and procedures, that all documentation submitted after the hearing was submitted in the same manner, and that some of this documentation was included in the administrative record, see, e.g., the "Batch 1" records, (located at R. 428-58), but the Batch 2 records were not included in the administrative record, and thus were not considered by the ALJ. See Doc. 16.

---

[6]     The court notes that the review of the documents at issue has been further complicated by the fact that the Batch 2 records contain confidential information, including plaintiff's social security number. The filing of such information on the court's CM/ECF online filing system must follow specific procedures.

A comparison of the Batch 1 and Batch 2 documents reveals that both sets of documents consist of outpatient medical records from Temple University School of Medicine, Department of Psychiatry for the same time period, July 8, 2009 to February 18, 2010.  The Batch 1 documents appear in administrative record at R. 428-58.  Specifically, the Batch 1 records consist of the following documents:

| Record citation | Document |
|---|---|
| R. 428-29 | transmission cover sheets |
| R. 430-41 | records dated July 8, 2009 reflecting plaintiff's initial assessment performed by Kavita Jagarlamudi, M.D. |
| R. 442 | list of blood tests performed on July 24, 2009 |
| R. 443-58 | progress notes of therapy sessions with Dr. Jagarlamudi dated:<br><br>February 18, 2010<br>February 4, 2010<br>January 28, 2010<br>January 21, 2010<br>January 14, 2010<br>December 17, 2009<br>December 10, 2009<br>December 1, 2009<br>November 23, 2009<br>November 5, 2009<br>October 22, 2009<br>October 15, 2009<br>October 9, 2009<br>September 17, 2009<br>September 10, 2009<br>September 3, 2009 |

The Batch 2 documents that plaintiff submitted to this court by letter brief dated May 29, 2014, consist of twenty-five pages of outpatient medical records from Temple University School of Medicine, Department of Psychiatry.  Again, the Batch 2 records pertain to

the same time period as the Batch 1 records, July 8, 2009 to February 18, 2010.  Specifically, the

Batch 2 records submitted to the court by plaintiff's counsel are comprised of the following:

| Document: |
| --- |
| Progress notes of therapy sessions with Dr. Jagarlamudi dated:<br><br>August 27, 2009<br>August 14, 2009<br>August 6, 2009<br>July 29, 2009<br>July 23, 2009<br>July 15, 2009 |
| Treatment Plans signed by Dr. Jagarlamudi, along with Zung Self Rating Depression Scale dated:<br><br>January 14, 2010<br>October 15, 2009<br>July 23, 2009<br>July 15, 2009<br>July 8, 2009 |
| Patient Flow Sheet dated July 24, 2009, listing certain baseline blood test results |
| Laboratory results for various blood tests reported on July 28, 2009 |
| List of plaintiff's medications, as reported by plaintiff, dated December 1, 2009 |
| List of plaintiff's medications, as reported by plaintiff, dated July 8, 2009 |
| List of plaintiff's prescriptions for Abilify and Trazodone, including dosage, for the period July 29, 2009 to December 10, 2009 |
| Medication Consent executed by plaintiff on December 1, 2009, in which plaintiff represents that Dr. Jagarlamudi educated plaintiff regarding the administration of and possible side effects of the Trazodone prescription |
| Medication Consent executed by plaintiff on July 29, 2009, in which plaintiff represents that Dr. Jagarlamudi educated plaintiff regarding the administration of and possible side effects of the Abilify prescription |

In her initial Request for Review, plaintiff argues that the case should be

remanded simply because the ALJ did not review or address the Batch 2 documents, relying on

Burns and Burnett.  (Pl.'s Br. at 18-21.)  In Burns, the Third Circuit found that the ALJ must

evaluate all relevant evidence and must explain his reasons for rejecting any such evidence.

Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).  In Burnett, the Third Circuit stated that the

ALJ must consider all the evidence before him and must give some indication of the evidence

which he rejects and his reasons for doing so.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d

112, 131 (3d Cir. 2000).

Even assuming arguendo that all documentation submitted by plaintiff after the

administrative hearing, including the Batch 2 records, was submitted properly in accordance with

the Commissioner's regulations and procedures, the court finds that the ALJ's failure to

explicitly address the Batch 2 records in her decision is, nonetheless, harmless error.  "An error is

'harmless' when, despite the technical correctness of an appellant's legal contention, there is also

'no set of facts' upon which the appellant could recover."  Brown v. Astrue, 649 F.3d 193, 195

(3d Cir. 2011) (citing Renchenski v. Williams, 622 F.3d 315, 341 (3d Cir. 2010)).  Both the

Batch 1 and the Batch 2 documents cover the same time period, July 2009 to February 2010.  The

ALJ had the most current information before her when she reviewed the Batch 1 documents.  The

data and information contained in the Batch 2 documents reflects plaintiff's status during the

earlier stages of her outpatient psychiatric treatment at Temple University Hospital, while the

Batch 1 documents also detail plaintiff's status during the later part of the time period and reflect

the progress that plaintiff made with psychotherapy.  Compare Batch 1 documentation (R. 443-

58, progress notes of therapy sessions with Dr. Jagarlamudi dated September 2009 to February

2010) with Batch 2 documentation (progress notes of therapy sessions with Dr. Jagarlamudi

dated July 2009 to August 2009).  The Batch 2 documents that plaintiff references in her Brief in

support of her argument that the ALJ failed to adequately consider such evidence, see Pl.'s Br. at

20, demonstrate Dr. Jagarlamudi's impressions of plaintiff at the beginning of her treatment of

plaintiff, on July 23, 2009.  Thus, the Batch 2 documents do not provide any additional evidence of a mental impairment that is not already reflected in the Batch 1 documents (which were addressed by the ALJ and included in the administrative record).  Substantial evidence of record, e.g., the Batch 1 documents, support the ALJ's conclusions concerning plaintiff's mental impairment.  See Pailin v. Covlin, 2013 WL 5924972, at *6 (E.D. Pa. Nov. 5, 2013) (finding that any error committed by ALJ in failing to specifically indicate the weight he gave to witness's testimony was harmless because substantial evidence supported the ALJ's conclusions and further "[i]t is abundantly obvious on remand, the ALJ would simply discount [the witness's] credibility for the same reasons that she discounted Plaintiff's claims of complete disability.").

Moreover, because the Batch 2 documents do not provide any additional information that the ALJ did not already have when she reviewed the Batch 1 documents, remand is not warranted.  The ALJ accounted for plaintiff's mental impairments when she assessed plaintiff's RFC by limiting plaintiff to "simple, repetitive tasks with only occasional changes in the work setting."  Thus, the inclusion of the Batch 2 documents in the administrative record would not have changed the outcome of the case.  See  Rutherford, 399 F.3d at 553 (remand not required in Social Security disability case if it would not affect the outcome of the case).  See also Sen Trinh v. Astrue, 900 F.Supp. 2d 515, 528 (E.D. Pa. 2012) (finding ALJ's error to be harmless and declining plaintiff's request to remand case to further evaluate witness's testimony and credibility, because remand would not change the outcome of the case); Lyons v. Barnhart, 2006 WL 401848, at *2, n.3 (E.D. Pa. Feb. 16, 2006) (finding that remand is not warranted where stricter compliance with a social security ruling would not affect the outcome of the case).  Substantial evidence in the record supports the ALJ's analysis of plaintiff's mental impairments.[7]

---

[7]     In her brief, plaintiff also offers the evidence of mental impairments as justification for her failure to follow prescribed treatment.  (Pl.'s Br. at 21-23.)  That is, that plaintiff's failure to

**E.     Testimony of Vocational Expert**

Plaintiff also takes issue with the VE's response to the ALJ's hypothetical. Plaintiff appears to argue that the hypothetical question posed to the VE was deficient; therefore, the hypothetical does not constitute substantial evidence upon which the ALJ can rely.  See Pl.'s Br. at 23-24.

The ALJ must include in the hypothetical to the VE all of a claimant's limitations which are supported by the medical record.  Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  A VE's testimony in response to a hypothetical "that fairly set forth every credible limitation established by the physical evidence," may be relied upon by the ALJ as substantial evidence.  Plummer, 186 F.3d at 431. ) In the case at bar, the ALJ asked the VE to consider an individual of plaintiff's age, education and work experience, with a residual functional capacity limited to a light level of exertion, who must avoid "dust, fumes, toxins, etc." and "moving or dangerous machinery," and who is limited to simple, repetitive tasks with only occasional changes in the work setting.  (R. 60-61.)  The VE opined that such an individual could not return to plaintiff's past work, but could work as an inspector, an assembler of plastic hospital equipment, or an assembler of electrical accessories. (R. 61.)  The VE also provided the number of jobs in the national and regional economies for such positions.  Id.  Contrary to plaintiff's assertion, the hypothetical questions posed to the VE accurately reflected all of plaintiff's impairments that are supported by the record.  See Burns,

---

comply with prescribed treatment is a result of her mental impairments.  Id.  Plaintiff contends that courts have held that if SSI benefits are denied on the basis of a refusal to follow prescribed treatment, such refusal to follow prescribed treatment must be willful and without a justifiable excuse, not the result of a mental impairment.  Id.  This court is unpersuaded by plaintiff's argument.  While the ALJ discussed plaintiff's lack of compliance with her prescribed treatment, the ALJ's decision demonstrates that plaintiff's lack of compliance with prescribed treatment was not the sole basis for the ALJ's findings.

312 F.3d at 123 (finding that the question posed to the vocational expert must include impairments supported by "medically undisputed evidence" in the record).  As such, the ALJ properly relied upon the VE's responses in reaching her conclusions.

**V.      CONCLUSION**

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are supported by substantial evidence.  Accordingly, the court makes the following:

**R E C O M M E N D A T I O N**

AND NOW, this 10th day of July, 2014, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review, defendant's Response to Request for Review by Plaintiff, and plaintiff's Reply, it is respectfully recommended that plaintiff's Request for Review be **DENIED**.

The parties may file objections to the Report and Recommendation.  See Loc. R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALETHIA JAMES                          :               CIVIL ACTION
                                       :
          v.                           :
                                       :
CAROLYN W. COLVIN,                     :
Acting Commissioner of Social Security :
Administration[1]                      :               NO.  11-5096

## ORDER

        AND NOW, this     day of           , 2014, upon consideration of plaintiff's Brief

and Statement of Issues in Support of Request for Review, defendant's Response to Request for

Review of Plaintiff, and plaintiff's reply thereto, and after review of the Report and

Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**O R D E R E D**

    1.    The Report and Recommendation is **APPROVED** and **ADOPTED**.

    2.    Plaintiff's Request for Review is **DENIED**.

    3.    The Clerk of Court is hereby directed to mark this case closed.


BY THE COURT:


_____
JAMES KNOLL GARDNER,          J.

---

[1]    On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted as the defendant in this case.